**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel J. Foschi,<br><br>               Plaintiff,<br><br>v.<br><br>Dennis M. Pennella, et al.,<br><br>               Defendants. | No. CV-14-01253-PHX-NVW<br><br>**ORDER** |

Before the Court are Plaintiff's Motion to Proceed Conditionally as a Collective and Class Action (Doc. 22), Defendants' Response (Doc. 28) and Plaintiff's Reply (Doc. 29). Plaintiff asks the Court to certify a collective action brought under the Fair Labor Standards Act ("FLSA"), alleging Defendants paid Plaintiff and fellow class members less than minimum wage and failed to pay increased wages for overtime work. In addition, Plaintiff seeks certification of a Federal Rule of Civil Procedure 23(b) class of workers to whom Defendant failed to provide minimum wage, as required by Arizona state law. For the reasons that follow, Plaintiff's Motion will be granted in part and denied in part at this time.

## I.  BACKGROUND

Since October 2004, Plaintiff has worked as a delivery driver and dispatcher for Defendant Drivers Solutions, which describes itself as "a complete delivery service company that specializes in automotive parts distribution and comprehensive logistics." Doc. 1-1 at 8 (quoting Defendant's website). According to Defendant, it dispatches its

workers to auto dealerships, including dozens in the metropolitan Phoenix area, where they often negotiate the terms of their client relationships directly with the dealerships. Doc. 28 at 4. Defendant's contracts with its workers, who have numbered up to 500 since 2007, include "monthly contracts, daily contracts, special-day-rate contracts (usually for weekends) and per-delivery or Hot Shots contracts." *Id.* at 4-5. Plaintiff's responsibilities as a driver include participating in morning roll call with a supervisor, delivering parts from the dealership warehouse to vendors, transporting car parts from vendors or other dealerships to the warehouse, collecting payment from vendors and distributing parts among warehouse bins. Doc. 1-1 at 9. As a dispatcher, Plaintiff creates routes for other drivers, drafts manifests and distributes them to drivers, supervises a group of eight to ten drivers, and requests transfers for unsatisfactory drivers. *Id.* at 10.

Plaintiff alleges, "[u]pon information and belief," that these duties are similar to the responsibilities of other drivers and dispatchers who work for Defendant. *Id.* Plaintiff further alleges that, in addition to imposing a $25 penalty for calling in sick, Defendant deducts $120 if he or "similarly situated drivers" miss work or leave early. *Id.* at 11. In addition, Plaintiff—and, "[u]pon information and belief, other drivers"—must pay Defendant $20 semi-monthly to use a two-way radio, as well as $22 for each work shirt, which they are required to wear. *Id.* Plaintiff and other drivers are allegedly personally responsible for purchasing "items required by the company such as: a telephone, mapbook, car insurance, car maintenance, and straps/bungee cords." *Id.* Finally, Defendant allegedly takes "standard paycheck deductions" for contractor insurance coverage, advances, and interest charged on advances. *Id.* at 10-11. The cumulative effect of these practices, according to Plaintiff, is that his gross pay usually falls below the minimum wage. *Id.* at 12.

Separately, Plaintiff alleges that since January 2007, he has regularly worked between 45 and 53 hours per week, including on about 80 percent of Saturdays. *Id.* Defendant allegedly failed to compensate Plaintiff for these overtime hours at one-and-a-half times his normal hourly rate. *Id.* Plaintiff alleges in his Motion, for the first time,

1 that this failure owes to Defendant's decision to misclassify him and other members of
2 the potential class as independent contractors. Doc. 22 at 14.
3 In May 2014, Plaintiff filed suit in Maricopa County Superior Court against
4 Defendants—Drivers Solutions and its owners, Dennis and Mary Pennella—for (1)
5 willfully failing to compensate him for overtime work, as required by 29 U.S.C. § 207,
6 (2) willfully failing to pay him at least the federal minimum wage, as required by 29
7 U.S.C. § 206, and (3) willfully failing to pay him at least the Arizona state minimum
8 wage, as required by A.R.S. § 23-363(A). Plaintiff's Complaint asserts that it is brought
9 on behalf not only of Plaintiff, but also of "all other similarly situated employees who
10 work, or have worked, for Defendants and who have not been paid the requisite overtime
11 compensation" since January 1, 2007. Doc. 1-1 at 6. On June 6, 2014, Defendants
12 removed the case to this Court, and Plaintiff filed the instant action on August 15, 2014,
13 seeking certification of proposed collective and class actions and requesting that the
14 Court order notice be sent to potential class members.

**II. ANALYSIS**

    **A. Fair Labor Standards Act**

        **1. Legal standard**

19 "The FLSA provides that a covered employer shall not employ any employee 'for
20 a workweek longer than forty hours unless such employee receives compensation for his
21 employment in excess of the hours above specified at a rate not less than one and one-
22 half times the regular rate at which he is employed.'" *Wood v. TriVita, Inc.*, No. CV-08-
23 0765-PHX-SRB, 2009 U.S. Dist. LEXIS 64585, at *3-4 (D. Ariz. Jan. 22, 2009) (quoting
24 29 U.S.C. § 207(a)(1)). The law also mandates that "[e]very employer shall pay to each
25 of his employees who in any workweek is engaged in commerce or in the production of
26 goods for commerce, or is employed in an enterprise engaged in commerce or in the
27 production of goods for commerce, wages" that are "not less than" specified statutory
28 rates. 29 U.S.C. § 206(a)(1). "Any employer who violates the provisions of [§ 206 or §

207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." *Id.* § 216(b).  An action to recover these damages "may be maintained against any employer … in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  *Id.*  "The FLSA requires class members who are not named in the complaint to affirmatively opt in to the class by filing a written consent with the Court."  *Wood*, 2009 U.S. Dist. LEXIS 64585, at *5 (citing 29 U.S.C. §§ 216(b), 256).  "The district court has discretion to determine whether a collective action is appropriate."  *Id.* at *6 (citation and internal quotation marks omitted).

"Section 216(b) does not define 'similarly situated,' and the Ninth Circuit has not construed the term. Federal district courts have taken at least three approaches to determining whether plaintiffs are 'similarly situated' for purposes of § 216(b): (1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions. However, district courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination."  *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010) (citations and most internal quotation marks omitted).

"Under the two-step approach, the court determines, on an ad hoc case-by-case basis, whether plaintiffs are similarly situated. This requires the court to first make an initial 'notice stage' determination of whether plaintiffs are 'similarly situated.' At this first stage, the court require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit potential class members to opt-into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to

1 decertify the class filed by a defendant, the court makes yet another determination
2 whether the proposed class members are similarly situated; this time, however, the court
3 utilizes a much stricter standard to scrutinize the nature of the claims." *Id.* (alteration in
4 original) (citations and internal quotation marks omitted).

5       "While conditional certification at the first stage is by no means automatic,
6 Plaintiffs' burden is light. All that need be shown by the plaintiff is that some identifiable
7 factual or legal nexus binds together the various claims of the class members in a way
8 that hearing the claims together promotes judicial efficiency and comports with the broad
9 remedial policies underlying the FLSA. Given the light burden, motions to conditionally
10 certify a class for notification purposes are 'typically' granted. To proceed to the
11 notification stage of the litigation, Plaintiffs' allegations need neither be 'strong [n]or
12 conclusive.'" *Id.* at 925-26 (alteration in original) (citations and some internal quotation
13 marks omitted).  "Courts recognize that collective action notification normally occurs
14 before the Parties have had the chance to engage in extensive fact discovery. That is why
15 in making a determination in whether to conditionally certify a proposed class for
16 notification purposes only, courts do not review the underlying merits of the action." *Id.*
17 at 926 (citations omitted).  The court's determination at this first step is "based primarily
18 on the pleadings and any affidavits submitted by the parties." *Hutton v. Bank of Am.*, No.
19 CV 03-2262-PHX-ROS, 2007 U.S. Dist. LEXIS 97516, at *2 (D. Ariz. Mar. 31, 2007)
20 (citations and internal quotation marks omitted).

21       **2.    Plaintiff's Case**

22       Defendants urge the Court to assess Plaintiff's "similarly situated" claim under the
23 standard applicable to certifying Rule 23 class actions.  Although Defendants are correct
24 that this Court "cannot function as a rubber stamp for any and all claims that come its
25 way under this statute," *Colson*, 687 F. Supp. 2d at 929-30, the Court will adopt the two-
26 step approach that is "generally follow[ed]" by Ninth Circuit district courts, *id.* at 925.

### a. Overtime

With respect to Plaintiff's FLSA overtime claim, he has failed to make any allegations, much less "substantial" allegations, that "the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 925 (citation and internal quotation marks omitted). Plaintiff's state court Complaint alleges that he regularly works between 45 and 53 hours per week and has never been compensated for these excess hours, but it does not allege that other drivers work similar hours. Nor does it allege that he and other drivers are subject to a uniform policy or plan regarding the number of hours they must work per week and their wages for overtime hours. The closest Plaintiff comes to alleging any such policy is his assertion that "[d]rivers are told they will work nine (9) hour days on the same work day schedule as the dealership where Drivers Solutions placed them." Doc. 1-1 at 12. The Complaint's prayer for relief states only that "Defendants have willfully failed to compensate [Plaintiff] for overtime hours he worked" and that "[Plaintiff] is entitled to receive compensation at a rate of one and one-half times (1½ x) the regular wage rate for any hours worked for the Defendants in excess of forty hours in any week." *Id.* Plaintiff does not pray relief for other workers. Similarly, the Declaration accompanying Plaintiff's Complaint is devoid of any allegation that Plaintiff, let alone Defendants' other workers, was the victim of a policy to deny overtime pay.

The section of the Complaint that describes the parties to the suit does contain an assertion that "[Plaintiff's] claims are typical of the claims of the class" and that the "claims asserted herein on behalf of [Plaintiff] and the class present questions of law and fact common to the class including, in particular, whether Defendants have failed to pay the requisite overtime and minimum wage compensation to their employees." *Id.* at 7. But these vague and conclusory assertions are insufficient to carry Plaintiff's burden, "light" though it may be. *Colson*, 687 F. Supp. 2d at 925. Plaintiff states in his Motion that his "Complaint further alleges that Defendants have a policy and practice of not paying overtime compensation for all hours worked in excess of forty per week." Doc.

1   22 at 3.  The paragraphs in the Complaint that the Motion cites for this proposition,
2   however, allege no such policy.
3       Finally, the Motion claims that "[b]ased upon his experience and observations,
4   [Plaintiff] believes that Defendants also failed to pay overtime to other members of the
5   proposed collective and class action group who worked more than forty hours in a given
6   week."[1]  *Id.* at 5.  Even if this sentence is construed to allege Defendants employ a
7   uniform policy, it comes too late.  The step-one determination in FLSA motions to certify
8   is "based on *the pleadings and any Declarations* that have been submitted." *Anderson v.*
9   *Ziprealty, Inc.*, No. CV 12-0332-PHX-JAT, 2013 U.S. Dist. LEXIS 63817, at *6 (D.
10  Ariz. May 3, 2013) (emphasis added) (citation omitted).  A plaintiff may meet his burden
11  by making "*detailed* allegations *supported by affidavits* which successfully engage
12  defendants' affidavits to the contrary."  *Id.* at *7 (emphasis added) (citation omitted).
13  Plaintiff's pleadings and declaration contain no allegations—and certainly no detailed
14  allegations—that Defendants have a policy of not paying the required overtime wage.
15  The Court has found no cases that address whether an allegation of a class-wide policy is
16  sufficient if raised for the first time in a plaintiff's motion to certify.  Nevertheless, and
17  notwithstanding the "lenient" standard that governs step one, *id.*, Plaintiff has not yet
18  satisfied the legal requirements for certifying a collective action on his overtime claim.

19                    **b.     Minimum wage**

20      Plaintiff's Complaint and Declaration do, however, include sufficient allegations
21  regarding policies pursuant to which Defendants pay drivers less than the federal
22  minimum wage.  The Complaint alleges that Plaintiff and "similarly situated drivers" are
23  docked similar amounts for missing work or leaving early.  It also lists numerous
24  expenses that Plaintiff must personally incur in order to perform his work and then

---

[1] Plaintiff's Motion also states that "[Plaintiff] and members of the potential class were misclassified by Defendants as independent contractors," Doc. 22 at 14, which under the FLSA would absolve Defendants of their responsibility to pay overtime wages at one-and-a-half times the regular rate. But this allegation, which is raised in the portion of the Motion addressing the Rule 23 class, apparently pertains only to Plaintiff's claims under Arizona minimum wage law.  *See* Doc. 22 at 14.  The Court therefore will not consider this allegation when deciding on certification of the FLSA overtime claim.

alleges that "[u]pon information and belief, other drivers have similar financial responsibilities." Doc. 1-1 at 11. In his Declaration, Plaintiff alleges that "according to [his] knowledge and experience, the pay is the same for all drivers" employed by Defendants, and that he and "[t]he other drivers … are required to pay" for the same work-related insurance. *Id.* at 25. Nowhere does Plaintiff explicitly state that these policies push both his and other drivers' pay below the minimum wage, but that conclusion is clearly implied in his pleadings.

But while the Complaint and Declaration can be read to plead a policy governing Defendants' drivers, they contain no information at all about any policies with respect to dispatchers. At oral argument, Plaintiff informed the Court that, like drivers, dispatchers are subject to penalties and salary reductions for any days they miss work. But this information was not contained in the pleadings, and therefore it cannot form the basis for certifying a FLSA collective action. *See Anderson*, 2013 U.S. Dist. LEXIS 63817, at *6-7.

Defendants make two principal arguments against certifying the collective action, both of which lack merit. First, Defendants claim the factual circumstances of different class members' employment are sufficiently varied that they cannot comprise a single class. But at step one of the certification process, a plaintiff is not required to present evidence that all class members are similarly situated in every way. *See Adams v. Inter-Con Sec. Sys.*, 242 F.R.D. 530, 537 (N.D. Cal. 2007) ("For conditional certification, plaintiffs do not need to provide evidence that every facility relevant to the proposed class maintains an illegal policy."). Rather, such a demanding standard is only appropriate, if at all, at stage two. *See Colson*, 687 F. Supp. 2d at 925. Second, Defendants argue the collective action should not be certified because Plaintiff has not yet obtained opt-ins from any other potential class members. But the FLSA does not require plaintiffs to secure fellow class members before moving to certify a class, and district courts in the Ninth Circuit have not imposed such a requirement. *Kiser v. Pride Commc'ns, Inc.*, No. 2:11-CV-00165-JCM-LRL, 2011 U.S. Dist. LEXIS 96622, at *4-5

(D. Nev. Aug. 29, 2011). With respect to the drivers employed by Defendants, Plaintiff has carried his burden of establishing that "some identifiable factual or legal nexus binds together the various claims of the class members." *Colson*, 687 F. Supp. 2d at 925 (citation and internal quotation marks omitted).

### 3. Statute of Limitations

Any FLSA claim for unpaid minimum wages or unpaid overtime compensation "may be commenced within two years after the cause of action accrued … except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Because the parties have not yet produced enough discovery for the Court to determine whether Defendants' alleged violations were willful, Plaintiff's collective action with respect to his minimum wage claim will be certified for the period beginning three years before Plaintiff filed his Complaint. *See Anderson*, 2013 U.S. Dist. LEXIS 63817, at *9-10 (preliminarily applying three-year statute of limitations, pending discovery). For any co-plaintiffs who opt in, the claim will cover the three years prior to the dates on which they opt in. *See* 29 U.S.C. § 256(b). Should Defendants file a decertification motion in the future, the Court will then, in light of evidence produced during discovery, reassess whether the two- or three-year statute of limitations should apply to plaintiffs' claims, unless that question should be decided at trial. *See Anderson*, 2013 U.S. Dist. LEXIS 63817, at *10.

### B. Arizona Minimum Wage Law

Plaintiff has also moved to certify a Rule 23 class action seeking damages for failure to pay Arizona's minimum wage. Under Federal Rule of Civil Procedure 23, the "party seeking class certification bears the burden of showing that each of Rule 23(a)'s requirements … has been met." *Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013) (citing *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007), *rev'd on other grounds*, 131 S. Ct. 2541 (2011)). Those requirements are as follows: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

1  fact common to the class; (3) the claims or defenses of the representative parties are
2  typical of the claims or defenses of the class; and (4) the representative parties will fairly
3  and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). If a class
4  representative satisfies all four conditions, the class will be certified as long as at least
5  one of the requirements in Rule 23(b) is also met. In this case, Plaintiff seeks
6  certification on the basis that he satisfies Rule 23(b)(3), namely that "the questions of law
7  or fact common to class members predominate over any questions affecting only
8  individual members, and that a class action is superior to other available methods for
9  fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).
10  Determining whether Plaintiff can satisfy these more demanding requirements is
11  difficult based on the scant record now before the Court, which contains only the
12  declaration of a single plaintiff and his assertion, upon information and belief, that other
13  employees are subject to similar policies. By the time Plaintiff seeks final certification of
14  the FLSA collective action, however, he will know more about the size of his class, the
15  extent to which his claim is common and typical of class members', his ability adequately
16  to represent the class, and whether common questions of law or fact predominate. The
17  Court will therefore deny Plaintiff's motion to certify a Rule 23 class action, without
18  prejudice to refiling a similar motion based on a more complete factual record.

19

20  **C. Notice**

21  Plaintiff requests that the Court compel Defendants to produce the names and
22  addresses of all "similarly situated" employees so that he may notify them of the
23  collective and class actions. Courts routinely grant this request as a matter of course.
24  *See, e.g.*, *Anderson*, 2013 U.S. Dist. LEXIS 63817, at *12-13. Defendants will be
25  ordered to provide Plaintiff with the names and last known addresses of all drivers who
26  have worked for Defendants in Arizona for the three years prior to the date of this Order.
27  Defendants object to the proposed Notice of Opportunity to Opt-in or Opt-out of a
28  Lawsuit and Notice of Class Action that Plaintiff appended to his Motion. In particular,

1  Defendants maintain the Notice is deficient because it (1) "is silent as to potential class
2  members' right to seek their own counsel" and (2) "requires opt-in claimants to mail the
3  consent form to Plaintiff's counsel, not the Court."  Doc. 28 at 15.  To remedy these
4  defects, Defendants propose that the Court direct the parties to meet and confer so they
5  can settle on an agreed form of Notice.  Plaintiff does not object to this suggestion.  The
6  parties are therefore ordered to confer and submit to the Court by December 19, 2014, a
7  revised proposed Notice to send to potential class members, unless by that date Plaintiff
8  has filed a motion to amend the pleadings.  When the parties confer, they should amend
9  the Notice to reflect that Plaintiff's FLSA overtime claim has not been certified as a
10 collective action, and that the minimum wage claim has been certified only with respect
11 to Defendants' drivers.

12      IT IS THEREFORE ORDERED that Plaintiff's Motion to certify a collective
13 action seeking unpaid overtime wages under the FLSA is denied.

14      IT IS FURTHER ORDERED that Plaintiff's Motion to certify a collective action
15 seeking unpaid minimum wages under the FLSA is granted, to the extent of any damages
16 suffered within three years of the date on which each driver plaintiff opts in to the
17 collective action.

18      IT IS FURTHER ORDERED that Plaintiff's Motion to certify a Rule 23 class
19 action seeking unpaid minimum wages under the Arizona state minimum wage law is
20 denied without prejudice.

21      IT IS FURTHER ORDERED that by December 19, 2014, Defendants shall
22 provide Plaintiff with the names and last known addresses of all drivers who have worked
23 for Defendants in Arizona for the three years prior to the date of this Order.

24      IT IS FURTHER ORDERED that Plaintiff and Defendants shall confer and
25 submit to the Court by December 19, 2014, a revised proposed Notice to send to potential
26 class members, unless by that date Plaintiff has filed a motion to amend the pleadings.
27 / / /
28 / / /

1   IT IS FURTHER ORDERED that by December 19, 2014, the parties shall submit
2   to the Court a proposed schedule for the mailing of notice to potential FLSA class
3   members, unless by that date Plaintiff has filed a motion to amend the pleadings.
4   Dated this 9th day of December, 2014.

                                                    Neil V. Wake
                                              United States District Judge